IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Tristine Ford,                              )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )    Civil Action No. 11-591
                                            )
Michael J. Astrue,                          )
Commissioner of                             )
Social Security                             )
                                            )
            Defendant.                      )

AMBROSE, U.S. Senior District Judge

**OPINION
AND
ORDER**

I.    Synopsis

      Plaintiff Tristine Ford filed this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3),

seeking judicial review of the final decision of the Commissioner of Social Security

("Commissioner") denying her application for supplemental security income ("SSI") under Title

XVI of the Social Security Act ("Act") [42 U.S.C. §§ 1381-1383f]. The matter is now before the

Court on the parties' cross-motions for summary judgment. (Docket Nos. [8] (Plaintiff) and [10]

(Defendant)). Both parties filed Briefs in Support of their Motions. (Docket Nos. [9] (Plaintiff)

and [12] (Defendant)). After careful consideration of the submissions of the parties, and based

on my Opinion set forth below, Defendant's Motion for Summary Judgment is GRANTED and

Plaintiff's Motion for Summary Judgment is DENIED.

II.   Background

      Plaintiff filed an application for SSI on April 7, 2008 alleging disability beginning

August 15, 2004. R. 193. Plaintiff's application was administratively denied on August 5, 2008.

1

R. 87-91. Plaintiff responded by filing a written request for an administrative hearing on September 12, 2008. R. 95-97. On December 2, 2009, a hearing was held in Morgantown, West Virginia before an Administrative Law Judge ("ALJ"). R. 32-77. Plaintiff, who was represented by counsel, appeared and testified. *Id.* Testimony was also taken from an impartial vocational expert ("VE"). *Id.* In a decision dated March 8, 2010, the ALJ determined that Plaintiff is not "disabled" within the meaning of the Act. R. 8-31. The Appeals Council denied Plaintiff's request for review on March 31, 2011, thereby making the ALJ's decision the final decision of the Commissioner in this case. R. 1-5. Plaintiff commenced the present action on May 4, 2011, seeking judicial review of the Commissioner's decision. Docket No. [1]. The parties' cross-motions for summary judgment are the subject of this Opinion.

III.    Legal Analysis

*A.    Standard of Review*

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "[m]ore than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d

Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See* 5 U.S.C. § 706.

To be eligible for supplemental security income ("SSI"), a plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 41.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. § 416.920. A Claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (Steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (Step 5).

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984).

3

*B. The ALJ's findings as to Plaintiff's asthma, obesity, and sleep related breathing disorders*

Plaintiff argues that the ALJ erred by finding that Plaintiff's impairments did not medically equal the listed impairments of 3.03—Asthma and 3.10—Sleep-related Breathing Disorders because the ALJ's analysis did not adequately account for Plaintiff's obesity. *See* Docket No. [9] at p. 3 & 18. Defendant argues that the ALJ was not required to analyze the effects of an obesity-related respiratory impairment at Step 3 because Plaintiff had not put forth evidence to allow the ALJ to make a finding that Plaintiff had a severe impairment of asthma at Step 2. Docket No. [12] at p. 18-19. Defendant also submits that even if Plaintiff's asthma was a severe impairment, the ALJ properly found that Plaintiff failed to establish that the impairment caused significant limitations that have lasted or could be expected to last for a continuous period of twelve consecutive months. *Id.* at 19. I agree.

A claimant will not be found disabled if he does "not have a severe medically determinable physical or mental impairment [or a combination of such impairments] that meets the duration requirement." 20 C.F.R. § 416.920(c). The mere existence of an impairment does not mean that the impairment is severe—the alleged impairment must be medically determinable. 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."). A symptom not supported by a medically determinable impairment cannot be considered to cause any functional restrictions. 20 U.S.C. § 416.929(d); SSR 96-4p. An ALJ may consider a claimant's asserted limitations that lack objective medical support but may also reject such limitations if the record reflects conflicting evidence. *Rutherford v. Barnhard*, 399 F.3d 546, 554 (3d Cir. 2005).

I find that the ALJ appropriately considered all evidence submitted by Plaintiff as to her asthma. There is substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled notwithstanding her complaints of respiratory problems because there is no evidence in the record of any pulmonary function testing to establish a severe respiratory impairment. While Plaintiff sometimes complained of difficulty breathing, just as often, Plaintiff often reported no shortness of breath or chest pains. R. 546-603. Plaintiff also told her primary care physician that she did not have "bad lungs" but was losing her voice because she had been fighting with her fiancé. R. 579. When Plaintiff had difficulty breathing and wheezing, her symptoms improved after her primary physician administered a breathing treatment. R. 582. Despite Plaintiff's continued tobacco use, a chest x-ray administered in June 2009 found "no evidence of an acute pulmonary process." R. 523. Therefore, there is substantial evidence to support the ALJ's conclusion that Plaintiff does not have a severe respiratory impairment.

Moreover, I find that the ALJ adequately considered Plaintiff's obesity. Even where a claimant's obesity is found to be a "severe impairment," an ALJ still must consider the impact of the claimant's obesity in combination with her other impairments at Step 3 and at every subsequent step thereafter. SSR 02-1p; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009). While "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing," the ALJ is not required to "make assumptions about the severity" of obesity and "[o]besity in combination with another impairment may or may not increase the severity" of the impairment. SSR 02-1p. Here, the ALJ found obesity to be one of Plaintiff's "severe impairments" and, as required at Step 3, considered the effect of Plaintiff's obesity in combination with her other impairments. R. 15.

5

I find that there is substantial evidence to support the ALJ's conclusion that the effects of Plaintiff's obesity, when considered in combination with her other impairments, do not satisfy the impairments listed in Appendix 1. *Id.* The ALJ fully addressed Plaintiff's obesity, noting her weight, both at her consultative examination and at the time of her testimony, as well the fact that her Body Mass Index (BMI) fell within the Level III "extreme" obesity range, signaling that Plaintiff is among those with the greatest risk for developing obesity-related impairments. *Id.* However, as the ALJ noted, the record does not reflect that Plaintiff received "any treatment for chronic diseases of the cardiovascular or endocrine systems commonly associated with obesity during the period in question." *Id.*

In support of her argument, Plaintiff submits that this Court also should consider evidence of her sleep apnea, submitted for the first time to the Appeals Council. Docket No. [9] at p. 17. Although the Appeals Court accepted and considered this new information, it denied Plaintiff's request for review. *Id.* In the Third Circuit, it is well settled that a district court does not have jurisdiction to review the Appeals Council's decision to deny review nor can it weigh new evidence submitted to an Appeals Court using the substantial evidence standard in its review of the ALJ's decision. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). However, if a claimant has shown good cause for why the new material was not presented to the ALJ, a district court may remand the case to the Commissioner. *Id.*

Here, Plaintiff has failed to submit a "good cause" reason for why the new evidence was not previously submitted to the ALJ. She merely argues that the information is relevant when viewed in combination with her obesity, demonstrating disability. *See* Docket No. [9] at p. 17. It may be that Plaintiff is arguing that she has shown "good cause" because the sleep study leading to her diagnosis with sleep apnea occurred after her ALJ hearing and the ALJ's

decision.[1] Still, in order to obtain a remand, in addition to good cause, a claimant also must demonstrate that the new evidence is material. *Matthews*, 239 F.3d at 594 (citing *Szubak v. Sec'y of HHS*, 745 F.2d 831 (3d Cir. 1984)). "Material evidence" means that the evidence is "relevant and probative" and that there is "a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." *Szubak*, 745 F.2d at 833.

While the sleep study results were not available until after the ALJ hearing, Plaintiff has not adequately demonstrated that this new evidence would have changed the outcome of her SSI determination. Implicit in the materiality requirement for "good cause" is the requirement that that the new evidence "relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Id.* Plaintiff first applied for SSI in April 2008, alleging disability since August 15, 2004. Docket No. [9] at p. 1. During Plaintiff's physical Residual Functional Capacity ("RFC") Assessment conducted in August 2008, which found her to be morbidly obese, Plaintiff did not complain of sleeping difficulties. R. 445-450. The first evidence of Plaintiff's sleep problems surfaced around April 2009 when Plaintiff's primary care physician—the doctor ordering the sleep study—noted Plaintiff's sleeping problems in his progress notes. *See* R. 581 ("[Plaintiff] is having problem [sic] today with sleep again."). On January 19, 2010, Dr. Rasheed's notes indicate that he "would like to schedule her for a sleep study," but that Plaintiff's sleep improved when he adjusted her medication ("She states she is sleeping much better since we increased her Elavil . . . ."). R. 570-71. Then, on March 1, 2010, Dr. Rasheed noted that Plaintiff was "not returning phone calls to have a sleep study done." R. 570. It seems that while this difficulty was one of many ailments afflicting Plaintiff, it was not

---

[1] The sleep study was conducted on May 13, 2010 and June 10, 2010; the ALJ hearing was December 2, 2009 and the ALJ issued his opinion on March 8, 2010. *See* R. 27, 34, & 529-533.

one that she found necessary to address right away. Dr. Rasheed had to remind Plaintiff again in April 2010 to schedule a sleep study. R. 567. On the first day of her sleep study, Plaintiff also saw Dr. Rasheed, who noted that he believed that her medication was helping her sleeping pattern, and he advised her to continue to see a psychiatrist to assist with this issue. R. 565. Dr. Rasheed's notes do not indicate that Plaintiff's sleeping problems caused her major disruption. *See* R. 581-603. Additionally, after Plaintiff's sleep study and sleep apnea diagnosis, Plaintiff's breathing improved with Bi-PAP and breathing treatments. R. 557 & 559. Given that the new evidence does not relate to a significant portion of the time period for which she is seeking benefits (2004-2009) nor does it demonstrate subsequent deterioration of a previously non-disabling condition (alone or in combination with other impairments), Plaintiff has failed to establish that her new evidence is material for the purposes of remand.

C. *The ALJ's assessment of Plaintiff's Residual Functional Capacity ("RFC")*

Plaintiff argues that the ALJ's residual functional capacity assessment is not based on substantial evidence because the ALJ failed to give controlling weight to the opinions of Dr. Rasheed, Dr. Detore, Dr. Groves, and Dawn Wilhelm, and failed to properly submit all of Plaintiff's impairments to the vocational expert ("VE"). Docket No. [9] at p. 4.

"Residual functional capacity" ("RFC") is the work a claimant is able to do despite the limitations caused by his impairments. 20 C.F.R. § 404.1545; *Hartranft v. Apfel*, 181 F.3d 358, 359 n. 1 (3d Cir. 1999). An ALJ must weigh all of the medical and non-medical evidence available when conducting an RFC assessment. *Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000). The limiting effect of all of a claimant's impairments, even those not found to be "severe," is used in determining RFC. § 404.1545(e). Allegations of pain and other subjective symptoms must be weighed against objective medical evidence. *McDonald v.*

8

*Astrue*, 293 Fed. App'x (3d Cir. 2008) (citing 42 U.S.C. § 423 which requires medical findings to support symptoms as conclusive evidence of disability). In weighing medical evidence, an ALJ "is not free to employ her own expertise against that of a physician who presents competent medical evidence" but may "choose whom to credit" when presented with conflicting evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); 20 C.F.R. § 416.927. An ALJ is obligated to explain when discounting evidence and may give a treating source's opinion controlling weight. *Plummer*, 186 F.3d at 429; § 416.927(C)(2).

Here, there is substantial evidence that the ALJ properly weighed the medical opinions submitted on behalf of Plaintiff when evaluating RFC. First, the ALJ gave Plaintiff's treating physician, Dr. Rasheed, great weight to the extent that the ALJ found his opinion to be supported by medical evidence and consistent with other evidence in the record. R. 24. Reports by treating physicians are entitled to greater weight when supported by the medical evidence of record because such opinions reflect continued observations of a complainant over a span of time. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). In particular, the ALJ relied on the objective medical evidence provided by Dr. Rasheed (specifically his progress notes) reflecting "overall normal and stable findings, even though the claimant is obese." R. 25. The ALJ also greatly relied on Dr. Rasheed's documentation of changes in the Plaintiff's home life and her failure to comply with Dr. Rasheed's treatment recommendations in assessing Plaintiff's credibility. R. 24. For example, the ALJ points out that Dr. Rasheed referred Plaintiff for a functional capacities evaluation (FCE) but Plaintiff never obtained one. R. 24. At one point, Dr. Rasheed refused to refill Plaintiff's medication unless she obtained the blood work he had previously requested. R. 20 & 583. This led the ALJ to conclude that Plaintiff's symptoms "may not have been as serious" as alleged. R. 21. Therefore, the ALJ gave less weight to Dr.

Rasheed's opinions where he completed forms for the purpose of entitling Plaintiff to receive health insurance or other benefits. R. 24. The ALJ noted that Dr. Rasheed may have had "legitimate but somewhat secondary interests" when his assessments would entitle him to receive payment for the additional services Plaintiff sought. *Id.* I find the ALJ's reliance on Dr. Rasheed's opinions to be supported by substantial evidence.

Moreover, the ALJ adequately explained why she discounted the findings of doctors Detore, Groves, and Wilhelm. Plaintiff offered these medical opinions to establish disabling functional limitations associated with her mental impairments. First, the ALJ explained that Dr. Detore's report received little weight because it was based on a "one-time evaluation . . . [that is], by necessity, based largely on the claimant's subjective allegations." R. 16; *see also* R. 345- 354 & 418-426. Similarly, the ALJ gave little credence to the findings of Dr. Groves and Ms. Wilhelm. Given that Dr. Groves' opinion was based on a one-hour examination arranged by Plaintiff's representative, the ALJ discredited his opinion because Plaintiff had not been hospitalized for her mental impairments, and the ALJ found no objective evidence to support Dr. Groves' assertion that Plaintiff had experienced four or more episodes of decompensation. R. 16 & 23. Additionally, the ALJ gave little weight to Ms. Wilhelm's findings because the ALJ found that Ms. Wilhelm's own records did not support her opinion. The ALJ found Ms. Wilhelm unconvincing (i) because her report contained no work-related limitations (she merely had evaluated Plaintiff's daily living, social functioning, concentration, persistence and pace to conclude that Plaintiff could not engage in employment on a "regular, sustained, competitive and productive bases"), and (ii) because Ms. Wilhelm consistently rated Plaintiff at a level consistent with moderate limitations while contradictorily opining that Plaintiff's impairments were "marked" such as to satisfy one of the impairment listings of Appendix 1. R. 16 & 23. Given

10

the ALJ's conclusion that Plaintiff exaggerated the nature and extent of her impairments (because she found the record lacked an objective basis for many of Plaintiff's alleged limitations), it follows that the ALJ would give little weight to opinions that were largely based on Plaintiff's subjective complaints. R. 24. In sum, the ALJ explained that she did not rely on these medical source opinions because she found the accompanying evaluations limited in scope, in conflict with the overall medical evidence on record, and inconsistent with the Plaintiff's personal activities. Consequently, the ALJ concurred with the state agency assessments conducted in association with Plaintiff's application concluding that Plaintiff has the residual functional capacity to perform unskilled work requiring light exertion. R. 25. I find substantial evidence to support this conclusion.

Plaintiff further contests the ALJ's RFC analysis because she alleges that the ALJ failed to properly submit all of Plaintiff's impairments to the vocational expert ("VE") when posing hypothetical questions about Plaintiff's ability to engage in light and sedentary work. Docket No. [9] at p. 3-4. Specifically, Plaintiff claims that the ALJ did not ask about the Plaintiff's moderate limitations in concentration, persistence or pace. *Id.*

As explained above, the ALJ correctly evaluated all of Plaintiff's alleged symptoms, limitations, the medical opinions of her conditions, and the objective medical evidence on record to conclude that Plaintiff has the RFC to perform work requiring light exertion with modifications. I concur that the large majority of the medical evidence of record fails to support the conclusion that Plaintiff is disabled and cannot perform light and sedentary work. I find the ALJ's discussion of the record as a whole demonstrates that the ALJ's RFC assessment adequately addressed all of Plaintiff's credible limitations.

Therefore, it is immaterial whether the ALJ included all of Plaintiff's impairments in the hypothetical questions posed to the VE. An ALJ merely must accurately account for the appropriate degree of a claimant's limitations in formulating hypotheticals for a VE. *See McDonald v. Astrue*, 293 F. App'x 941, 946 (3d Cir. 2008). Here, the hypotheticals the ALJ submitted to the VE adequately reflected all of Plaintiff's impairments that had support in the record.[2] The ALJ's questions accurately conveyed Plaintiff's moderate limitations as itemized, work-related, functional restrictions. *See* R. 68 (asking the VE to assume Plaintiff could perform light exertional work and limited mental limitations by listing examples).

Additionally, contrary to Plaintiff's contention, I find no error in the ALJ providing for a sit/stand option in her RFC analysis. Social Security Ruling ("SSR") 83-12 advises that in situations where the medical facts lead an ALJ to believe that a claimant can perform light or sedentary work so long as she is able to alternate between periods of sitting and standing, it is appropriate for the ALJ to consult a VE to ensure that there are occupations allowing for such an option. *See Ayers v. Astrue*, 724 F. Supp. 2d 471 (D. Del. 2010). Because the ALJ asked the VE a hypothetical incorporating the sit/stand option and the VE was able to identify jobs that could accommodate the option, I find there is substantial evidence supporting the ALJ's inclusion of a sit/stand option in the RFC analysis.

The ALJ also properly considered Plaintiff's age, education, past work experience, and the VE's testimony that there a significant number of jobs in the national economy that Plaintiff could perform. Therefore, I find there is substantial evidence to support the ALJ's conclusion that Plaintiff has no impairment preventing her from performing all work activity.

---

[2] The ALJ also asked the VE about Plaintiff's ability to work assuming, arguendo, that all of Plaintiff's alleged symptoms and functional limitations were credible. R. 74. Given that scenario, the VE concluded Plaintiff was incapable of work. This hypothetical proved not to be informative as the ALJ discredited some of Plaintiff's alleged functional limitations.

*D. The ALJ's evaluation of Plaintiff's fibromyalgia*

Plaintiff also contends that the ALJ improperly evaluated her fibromyalgia impairment by requiring objective evidence. Docket No. [9] at p. 4 & 14.

In evaluating fibromyalgia, courts acknowledge that symptoms of the disease are entirely subjective and medical testing may not be able to assess the severity of fibromyalgia. *Singleton v. Astrue*, 542 F. Supp. 2d 367, 377 (D. Del. 2008) (citing *Wilson v. Apfel*, 1999 WL 993723, *1, n.1 (E.D. Pa. 1999)). Still, a claimant who has been diagnosed with fibromyalgia will not automatically be classified disabled under the Social Security Act. *Id.* An impairment still will not be found severe unless it medically determinable. 20 C.F.R. § 404.1520(a)(4)(ii). "Even in fibromyalgia cases, the ALJ must compare the objective evidence and the subjective complaints and is permitted to reject plaintiff's subjective testimony so long as he provides a sufficient explanation for doing so." *Nocks v. Astrue*, 626 F. Supp. 2d 431, 446 (D. Del. 2009). Symptoms alone, no matter how genuine, cannot be the basis for a finding of disability without medical signs or laboratory findings to support a determinable physical or mental impairment. SSR 96-4p. In fact, because of the subjectivity of the symptoms of fibromyalgia, the credibility of a claimant's testimony is paramount when evaluating whether a claimant's fibromyalgia impairment is disabling. *Singleton*, 542 F. Supp. 2d at 378. When assessing a complainant's symptoms, an ALJ may consider whether the record reveals clinical documentation of the complainant's symptoms and whether diagnosing physicians reported on the severity of the condition. *Id.*

I find that the ALJ properly evaluated Plaintiff's fibromyalgia. The ALJ did not find Plaintiff's fibromyalgia to be medically determinable because the record contains no objective testing to support Plaintiff's alleged symptoms or her primary physician's impressions. R. 14 &

19. I find no error in this assessment because there is substantial evidence supporting the ALJ's conclusion. First, the ALJ noted that the record does not contain any of the medically recognized trigger points for fibromyalgia: "[T]he record contains no finding of 11 of 18 tender points as required by the American College of Rheumatology for a diagnosis of fibromyalgia." R. 14 & 19. The ALJ also noted that Plaintiff's medical tests assessing symptoms typical of fibromyalgia came back normal. R. 14 & 264 (Plaintiff's rheumatoid factor, c-reactive protein, and erythrocyte sedimentation rates were normal). The ALJ explained that nowhere in the record is there evidence that Plaintiff visited a rheumatologist, even though her treating physician recommended it. R. 14. Similarly, the ALJ pointed out that Plaintiff never pursued physical or occupational therapy and, at her hearing, could provide no explanation for refusing to seek such treatment. R. 14 & 62. The ALJ also detailed how multiple x-rays of Plaintiff were normal and revealed no fractures, dislocations or other significant bone or joint abnormalities and only "minimal marginal osteophytes." R. 14 & 270-71. Physical examinations showed Plaintiff mostly had a normal range of motion and "no limitation of function for sitting, bending, standing, walking, lifting and grasping." R. 14 & 375. The ALJ noted that Plaintiff's primary care physician (Dr. Rasheed) "was 'pretty sure' that she had a history of fibromyalgia" but found little evidence to support the doctor's impressions because Plaintiff continued to report that she was overall stable and failed to complete requested laboratory work until she was told that her pain medications would not be refilled. R. 20 & 583.

Because fibromyalgia symptoms are subjective, it is significant that the ALJ made a credibility determination as to Plaintiff's alleged symptoms, finding that Plaintiff "has exaggerated the nature and extent of her impairments." R. 23-24. I find there is substantial support for this conclusion given that there is no medical evidence of Plaintiff's fibromyalgia and

Plaintiff's self-described daily activities since the alleged disability onset date involved activities "which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. 24 (Plaintiff's daily activities included, *inter alia*, cleaning, doing laundry, caring for her sick mother and children, and crocheting). R. 24. The ALJ acknowledged that Plaintiff's daily activities were "fairly limited" following Plaintiff's most recent evaluation before her hearing, but the ALJ concluded that the most recent limitations were "outweighed by the other factors discussed in [the ALJ's] decision." *Id.*

IV.    Conclusion

In conclusion, based on the evidence of record and the briefs filed in support thereof, I find there is substantial evidence to support the ALJ's conclusion that Plaintiff is not disabled within the meaning of the Social Security Act. As a result, I DENY Plaintiff's motion for Summary Judgment, and I GRANT Defendant's motion for Summary Judgment.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Tristine Ford,                          )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )     Civil Action No. 11-591
                                        )
Michael J. Astrue,                      )
Commissioner of                         )
Social Security                         )
                                        )
          Defendant.                    )

AMBROSE, Senior U.S. District Judge

ORDER OF COURT

AND NOW, this ___18___ day of June, 2012, after careful consideration of the

submissions of the parties and for the reasons set forth in the Opinion accompanying this Order,

it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. [8]) is DENIED and

Defendant's Motion for Summary Judgment (Docket No. [10]) is GRANTED. In accordance

with 42 U.S.C. § 405(g), the administrative decision of the Commissioner of Social Security is

hereby AFFIRMED.

BY THE COURT:

Donetta W. Ambrose
U.S. Senior District Judges